## David Robinson et al. v. Martha J. Ruprecht et al.

## Percival Steele, Receiver, Appellee, v. Martha J. Ruprecht, Appellant.

### Gen. No. 14,433.

1. DISMISSAL—*when does not terminate litigation.* Chancery litigation is not terminated with the dismissal of the original bill. An appeal is a continuance of the cause and not a new suit.

2. RECEIVERSHIPS—*effect of dismissal of bill.* When a bill upon which a receiver has been appointed is finally dismissed, without appeal, merely the legal occasion for a receivership ceases, not the receiver's duty to the court. The duty to the court ceases only with the receiver's discharge. The discharge should, ordinarily, concur with the entry of a final decree between the parties, but there are instances when it does not.

3. RECEIVERSHIPS—*when orders allowing fees not final.* Receiver's fees upon interlocutory accountings are not final. Neither are orders apparently not intended as final conclusive of the right of a party in interest to object to the aggregate claim for fees made upon the final accounting.

4. RECEIVERSHIPS—*propriety of allowance of counsel fees.* Receivers are entitled to the aid of legal counsel if necessary for the benefit of the trust or the preservation of the fund or to protect the receiver or the estate against unjust or unreasonable attack, even by the beneficiaries of the trust; his reimbursement or allowance of expenditures for counsel, or for litigation expenses, does not depend wholly upon the result of any such attack, but the reasonableness or unreasonableness of his position taken must be considered.

5. RECEIVERSHIPS—*how question of fees determined.* A receiver in chancery is only entitled to just and reasonable compensation

for services actually rendered and no more. Chancery does not recognize that there is a profession of receivers fixing fees and there is no such thing as a customary charge which is binding upon a chancellor in determining the amount of the allowance to be made.

6. PRACTICE—*what necessary to support final orders.* In order to support a final order findings of fact must be contained therein or else a certificate of evidence filed which supports such orders.

Partition. Appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Reversed and remanded. Opinion filed March 26, 1909.

**Statement by the Court.** This is an appeal by Martha J. Ruprecht from an order of the chancellor disposing of her objections to a report of Percival Steele, receiver, in the partition suit of Robinson v. Ruprecht. The litigation in which Steele was appointed receiver originated in a bill, filed March 4, 1896, between two brothers, a sister and four nieces of Curtis E. Robinson, Sr., who died on April 20, 1892, for partition of numerous pieces of real estate of which he died the owner. To that bill, Martha J. Ruprecht, Curtis E. Robinson, Jr., and Bessie L. Robinson, now Howison, children of Curtis E. Robinson, were made parties defendant and it was charged that their claim of legitimacy created a cloud upon the title to the property. However, on July 14, 1899, a decree was entered dismissing the original bill and finding the aforementioned three children to be his only heirs at law. This decree was affirmed by the Supreme Court June 21, 1901. Robinson v. Ruprecht, 191 Ill. 424.

On May 28, 1897, Percival Steele, appellee herein, was appointed receiver of the real estate involved, being some thirty or forty pieces, a very few of which were vacant, upon the motion of the original complainants. The appointment was by consent of all the parties and he immediately filed his bond in the penal sum of $50,000 and took possession of the properties. The order of appointment required him to care for,

manage and control the real estate; in other words, his duties were to collect the rents and manage the real estate under the control of the court.

Although a decree, as already stated, was entered, on July 14, 1899, dismissing the original bill and vesting the title of the properties in the three children, yet the receiver continued in possession and acted as receiver, until April 12, 1902, when, under an order of court, entered upon agreement of all the parties, he turned over possession to one Caroline A. Dyckman. In that order it was provided "that the question of the settlement of said receiver's account, and his discharge, be reserved." During the administration of his trust the receiver filed twenty-one reports, or one each four months, as required by the order of appointment. Notice of the filing of these reports seems to have been given. No objection was filed by any one to any of the reports and accounts prior to the twentieth and those prior reports and accounts were all approved. But, in no instance was there any contest or hearing upon these approvals. The orders of approval contain no findings of specific facts nor was there any certificate of evidence made in respect to any one of them. The twentieth, sometimes mistakenly called the final, report and account was filed on November 3, 1903. Martha J. Ruprecht filed her objection to this report as follows:

"First. Objects to said report in so far as the same seeks an allowance of $2,500 for services.

Second. Objects to the various sums in said report mentioned, aggregating $3,000 as having been paid by said receiver to himself for his services for the year 1901.

Third. Objects to all items paid the receiver as salary of collector and bookkeeper.

Fourth. Objects to all sums of money previously paid by said receiver as shown by his former accounts and reports, on account of receiver's compensation and salary of bookkeeper and collector."

On June 21, 1904, the receiver, Steele, filed what is

called an exception to Martha J. Ruprecht's fourth objection, "for the reason" as stated "that said objection is taken to former reports and accounts of said receiver, whereas the order of the court in this behalf directed the parties hereto to file objections to the receiver's twentieth and final report". On September 26, 1904, the court entered an order sustaining this exception so interposed by the receiver and directed that the report with the exceptions and objections be referred to a master "to take proofs and report his conclusions on the law and facts." Pending the reference the master's term expired and he was appointed special commissioner to continue hearing the matter. The commissioner's report upon the aforesaid objections (and also upon objections by Curtis E. Robinson and Bessie L. Howison) was brought into court on April 29, 1907. In that report he finds, as to Martha J. Ruprecht's first objection, that on January 2, 1902, the date of the receiver's nineteenth report, he, the receiver, had on hand $887.58; that from that date to and including November 3, 1903, the date of this twentieth report, he collected $10,374.85 and disbursed $7,223.42, and, in addition, credited himself with $377 paid a collector and bookkeeper, thus showing an aggregate of $7,600.42 for disbursements, which left $3.662.01 on hand; that from January 2, 1902, until in April, 1902, when the possession of the property was surrendered to Caroline A. Dyckman, there were from 120 to 150 tenants, a large number of whom paid small monthly rentals of from $5 to $10 per month, and the premises were largely old frame buildings, which required constant attention from the receiver both as to tenants and as to repairs; that after the surrender of possession in April, the receiver's services largely consisted in the collection of delinquent rents and "in winding up the receivership". The commissioner recommended that the receiver be allowed $250 per month, i. e. $875, for his services up to the surrender of possession in April, and $600 for

the remaining period up to and including November 3, 1903, a total of $1,475. The commissioner overruled the second objection of Mrs. Ruprecht (which was to the payment by the receiver to himself of sums aggregating $3,000, in 1901, for services), because the sums "were allowed said receiver pursuant to an order of court". Her third objection was sustained and $377, paid for salary of bookkeeper and collector, disallowed. As to the fourth objection the commissioner said, "I have disregarded the fourth objection of Martha J. Ruprecht, as not referring to the twentieth report of receiver". Everyone filed objections to this report of the commissioner, and these objections were ordered to stand as exceptions. Afterwards, on July 1, 1907, they were all overruled and the report confirmed. As a net result of the objections to the receiver's twentieth report, so far as the merits were passed upon, two items charged by the receiver were affected, the $2,500 for fees was cut down to $1,475 and the $377 for collector and bookkeeper was wholly disallowed. The costs of the reference were ordered to be paid one-half by the receiver and the other half by the objectors. This reference lasted about two years and considerable expert testimony was taken, 185 pages of testimony on behalf of the receiver and forty-four pages on behalf of the objectors to his report. The character of some of the testimony will later be referred to.

It appears that, on June 5, 1905, after service of notice, an order was entered, upon the oral motion of the receiver, authorizing him to employ counsel in the matter of the twentieth report and account then standing referred to a master, and, also, in the matter of a petition by Mrs. Ruprecht for an adjustment of the receiver's accounts, which petition prayed for the vacation of all the orders entered allowing fees to the receiver. Mrs. Ruprecht's petition was later eliminated, however, because dismissed by her without any hearing upon the merits. On April 1, 1907, the re-

ceiver reported to the court his employment of counsel for the aforesaid purposes and, further, that his counsel so employed had presented him with a bill for $500 for services to January 28, 1907, which the receiver asked that he might be allowed to pay. To this report and request Mrs. Ruprecht immediately filed an answer objecting. In that answer she set up that the only question involved was the settlement of the receiver's own compensation; that the receiver was himself a lawyer, and that the order allowing the employment of counsel was erroneous. The matter of this petition was then referred to another master. On September 30, 1907, this master filed his report allowing the sum of $500 asked saying, substantially, that no question was raised but what the services rendered were worth that sum and predicating his finding in favor of the receiver upon the fact that the court had empowered the receiver to employ a solicitor. Objections and exceptions to this report were filed and overruled; and the receiver was authorized to pay his solicitor the sum of $500, to pay the costs of this last reference, including $100 for the master's fees, and authorized to credit himself accordingly out of the funds in his trust. The chancellor also, at the same time, ordered the receiver to file his final report within thirty days. On December 2, 1907, the receiver filed his twenty-first and final report. This report and account covers the four years from November, 1903, to November, 1907. The receiver debits himself with money on hand November 3, 1903, $3,662.01; the bookkeeper and collector's item disallowed him, as aforesaid, returned $377; half of master's fees, in connection with his twentieth report, charged to him by the chancellor $85.81, and collections for the trust estate $191. He credits himself with his fee allowed him $1,475; his solicitor's fee allowed by the chancellor $500; total of the master's costs upon the reference of his twentieth report $171.62; total of the master's costs upon the reference as to his solicitor's fee $129, and other

disbursements for the trust estate $223.20. Thus we find receipts of $4,315.82, disbursements of $2,498.82, and a balance on hand, November 5, 1907, of $1,817. He asks that he be allowed to pay his solicitor a further sum of $300 for services rendered and that he be allowed to pay himself a reasonable sum for services rendered. To this final report Mrs. Ruprecht filed objections and, upon a hearing by the chancellor, the report and account was approved except as to an item of $20 which was disallowed. By the final order entered on December 11, 1907, closing the administration of this receivership, the receiver was allowed to pay a further amount of $175 to his solicitors and $100 to himself and he was directed to make final distribution and terminate the receivership by distributing the $1,562 remaining in his hands, after making the payments allowed, in equal parts to Martha J. Ruprecht, Curtis E. Robinson, Jr., and Bessie L. Howison. From this final order approving the final report and accounting and thus closing the receiver's administration of his receivership the three beneficiaries prayed and were allowed appeals to this court. Mrs. Ruprecht, only, perfected her appeal by the filing of a bond.

MASON & WYMAN, for appellant.

CHARLES LANE, for appellee.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

Appellant takes the position, in argument, that upon the entry of the decree of July 14, 1899, dismissing the original bill for partition, the receiver's office and duties terminated *ipso facto*. It is contended that the receiver's function and duty terminated by that action of the chancellor so that thereafter the receiver's possession of the properties in question was wrongful and he could, thereafter, charge nothing for his services as receiver. In the first place, counsel in taking such

broad and radical position overlooks the fact that the cause did not terminate by the order of dismissal. The litigation did not cease with the dismissal of the original bill. An appeal is a continuance of a cause and not a new suit. When the bill was dismissed the defeated parties prayed and were allowed an appeal to the Supreme Court. That appeal was perfected and the cause thus taken to the Supreme Court continued pending there until an opinion was filed, on June 21, 1901, and, thereafter, until a petition for rehearing was denied on October 23, 1901. Until the remanding order was filed in the Circuit Court the cause was not so pending in that court that the chancellor could discharge the receiver. Flaherty v. McCormick, 123 Ill. 525, 531; Smith v. Chytraus, 152 Ill. 664. The receiver, acting as an officer of the court, had no power or authority to surrender to any one the estate entrusted to him by the court until the chancellor had authorized or directed him to surrender it.

The property in the possession of the receiver was in *custodia legis*. Hooper v. Winston, 24 Ill. 354, 364. When a bill is finally dismissed, without appeal, merely the legal occasion for a receivership ceases, not the receiver's duty to the court. The duty to the court ceases only with the receiver's discharge. True, the discharge should, ordinarily, concur with the entry of a final decree between the parties; but there are instances when it does not.

A question arises as to the finality of the several orders of approval of the receiver's reports prior to that upon the receiver's final report. Appellant contends previous orders of approval were not final in respect to her present contentions. Appellee contends the previous orders were final and, therefore, under the doctrine of *res adjudicata*, preclusive of inquiry into the subjects in regard to which appellant desired inquiry to be made when the twentieth and twenty-first, or final, reports were acted upon. When the twentieth report was acted upon, and at other times, appellant

contended for, but was denied by the chancellor, an investigation of the reasonableness of the previous receiver's charges for his own services and his expenditures for fees of his solicitor. These solicitor's fees were, substantially all, for services in defending the receiver in the contest upon the approval of his twentieth report. Certain expenditures for a bookkeeper and collector were also complained of by appellant but these were disallowed and do not seem now to be in question.

In respect to the approvals of the first nineteen reports the record shows notices were served upon those interested that the reports would be presented, but, so far as the record shows, when they were severally presented no evidence was adduced of their correctness or of what services the receiver had rendered or as to the propriety of his charges for services; in fact there was no hearing whatever upon the approval of either of these reports. Vouchers seem to have accompanied the reports, but nothing was shown as to the correctness of the vouchers and none of the reports was verified by the receiver himself. When the twentieth report was filed appellant filed objections thereto and raised issues not only upon items therein but, in connection with objecting to the item of receiver's fees contained therein, she also contended for an investigation into the reasonableness of all amounts he had paid himself for fees appearing in previous reports. The issues raised upon that report were referred to a master and after a full hearing a report was made by the master and exceptions thereto heard by the chancellor and the master's report was confirmed. In his twentieth report the receiver stated that no allowance had been made to him for receiver's fees since January 11, 1902, that then an order had been entered authorizing him to pay himself, as receiver, the sum of $3,000, for his services as receiver "for the year 1901", and he asked that he might be authorized to pay himself $2,500 for his services from

January 1, 1902, to date, November 3, 1903. The receiver was mistaken in stating the purport of the order of January 11, 1902. That order was that he might pay himself the sum of $3,000 "on account" of the fees for services as receiver, generally, not for services "for the year 1901". However, in the hearing upon the twentieth report the amount of his claim for services, from January 1, 1902, to November 3, 1903, was cut down, as heretofore stated, and appellant was refused a hearing in respect to receiver's fees previously allowed. It is fair and just that appellant should be heard in respect to previous allowances and she was entitled to a hearing in that respect unless estopped by previous adjudication. Upon a hearing in that regard it might have developed the receiver had not been paid sufficient, or it might have developed that he had been paid more than sufficient for all his services during his entire administration. Either at that time or upon the final report she was entitled to be heard upon the aggregate of allowances and upon the aggregate value of his services. The administration of a receivership or other trust is one and a continuous matter. An order entered therein by the chancellor may or may not be final. Whether or not it be so depends both upon the intent or design in the entry thereof and upon what was actually done or considered at its rendition. If it be an intermediate order, during the administration of the trust, entered upon no evidence whatever, except the report of the receiver, or trustee, himself, it is not to be supposed that the order was intended as a final one. Here the record shows that some, if not all, of the previous allowances for receiver's fees were "on account". This precludes the idea of finality in respect to the allowance of receiver's fees, so far as such orders are concerned; and the effect thereof was to leave the subject open until the final allowance of receiver's fees. *Ad interim* petitions, reports and accounts of receivers, for advice and to advise the court and the

parties, are not only convenient but often necessary. Yet, to hold a judicial inquiry involving a hearing and the taking of evidence and, perhaps, an order of reference upon each separate act, report or account of a receiver or other trustee, made in the course of his administration, would be unnecessarily cumbersome and expensive. Under such practice the chancellors would be overwhelmed with intermediate hearings and the courts of review with appeals from final orders. Final orders are necessary, of course, upon distributions and in instances where the rights of any of the parties litigant or intervenors are finally passed upon; but they are not necessary upon the entry of orders allowing payments, for services and incidental expenditures, to receivers. One final adjustment is sufficient in that behalf. In the case at bar, so far as the first nineteen reports and accounts are concerned, the orders confirmatory do not show that they were entered upon hearings of the parties where evidence was adduced. Neither do these orders contain any findings of fact nor are there any certificates of evidence to sustain them, as is required in chancery procedure, in respect to final orders. This rule includes orders entered in the administration of receiverships. Heffron v. Rice, 40 Ill. App. 244, 257; Hayden v. C. T. & T. Co., 55 Ill. App. 242. We cannot regard these orders as having been rendered *in invitum* and, therefore, apply the doctrine of *res adjudicata*. The provision that the receiver's fees were allowed ''on account'' clearly indicates that such items were to be further considered. We are of opinion that the confirmatory orders upon the first nineteen reports are not preclusive upon appellant, and there was error in refusing to inquire into the items or class of items complained of and contained in those reports.

There was error in sustaining the ''exception'' to the appellant's fourth objection to the receiver's twentieth report. The same error intervened in the refusal to sustain appellant's exception to the com-

missioner's report, in respect to this same fourth objection. By the sustaining of the "exception" to appellant's fourth objection aforesaid, appellant was denied a hearing upon her complaint in respect to the items, or class of items she objected to in the first nineteen reports.

The chancellor had full power and authority, when the final report of the receiver was filed, to investigate and determine the correctness of all his accounts, notwithstanding previous approvals of reports and accounts for parts of the period of the receiver's administration. Standish v. Musgrove, 223 Ill. 500, 507.

There is no room in such case as this for the invocation, by the receiver, of the doctrine of equitable estoppel.

The compensation of a receiver, as contended by appellee, must be determined according to the circumstances in each particular case. Such compensation should not be based upon the testimony of witnesses who may be willing to testify as experts upon receiver's fees generally. Equity does not know and cannot be controlled or influenced by any custom established of a usual and customary charge, generally, by receivers for their services as receivers. Chancellors cannot recognize that there is a profession of receivers fixing its fees, as such. One of the evils that would result from so establishing a standard for receivers' fees is shown in the case at bar. The witnesses, as here, who would testify to the custom, would nearly always be witnesses largely influenced by their selfish interests, because they themselves would be in the business of being receivers. Unfortunate litigants should not be compelled to contend against such a custom. One of the expert witnesses here testified before the master that he was the manager of the receivership department of a certain corporation and knew the usual, reasonable and customary fees allowed receivers for services ren-

dered. Testifying upon the reference of the twentieth report and account he said that for the first year covered by that report such customary fee would be $2,000, and for the second year $1,000, and then something additional for legal services. According to the abstract he testified that, in certain of the courts here a custom in regard to such fees prevailed; that in one court the custom prevailed in derogation of the law; that in this matter, involving the collection of rents and managing these properties, "in estimating the value of the receiver's services in the year 1903 at $1,000, I did not take into account that the receiver collected less than $500. But I do not think the value of the services could be changed. There would be $1,000 worth of services rendered, no matter what the amount might be". Another like witness testified: "I cannot say whether it is customary to allow for unnecessary services by receivers. The fact that the receiver gave a $50,000 bond makes a good deal of difference. Assuming the receiver gave a $5,000 bond, that ought to make a difference of $400 or $500 a year. I think a receiver should be allowed several thousand dollars compensation because he has a large bond, even though there are individual sureties". And later: "I think the receiver ought to draw something because he was receiver, no matter whether he rendered any services or not. Sometimes it is worth a good deal to be receiver when you do not do anything for it. I don't fix the charge as to the actual time spent." And, referring to the charge for the second year in the twentieth report: "The important element is that he was still receiver. I have known of receivers getting paid when they did not do anything. There is a custom of that sort." Then, referring to the period between April 15, 1902, and November, 1903, this witness said: "He [the receiver] certainly should have compensation whether he did any work or not. Because the receiver is still in office and has not been discharged, the compensation ought to be still running on."

All this evidence was incompetent and worse than useless because it took up the time of the master, the court and the parties and created an expense in the taking, transcribing and reporting to the court. Receivers are entitled to just and reasonable compensation for services actually rendered and no more. This compensation is to be ascertained and fixed by considering the specific and particular services rendered and by ascertaining the fair, reasonable and customary charge for the rendition of such services—not, however, adding anything because rendered by one who happens to be a receiver. If the services rendered involve any clear and definite element of responsibility, that of course, when shown, would, without specification, naturally be considered in fixing the above mentioned fair, reasonable and customary compensation. Bonds of receivers are fixed in advance and frequently in anticipation that the money or property which will come to his hands will be more than subsequently does come to his hands or possession. At all events, the amount of the bond is fixed in advance when the knowl-· edge of the chancellor is not the same as it is when he finally fixes the receiver's compensation. Therefore the penal amount of the bond should not control or have any influence in determining the amount of the receiver's compensation. Much more fair and just data is always obtainable. There may, of course, be an allowance of any actual and reasonable expenditure in connection with procuring the surety upon the bond, if the receiver is obliged to have such expenditure.

Receivers are entitled to the aid of legal counsel if necessary for the benefit of the trust or the preservation of the fund (Platt v. Archer, 13 Blatchf. U. S. 352), or to protect the receiver or the estate against unjust or unreasonable attacks—even by the beneficiaries of the trust. His reimbursement or allowance of expenditures for counsel, or for litigation expenses, does not depend wholly upon the result in any such

attack, but the reasonableness or unreasonableness of his position taken must be considered.

So far as the record herein discloses, there was no evidence whatever adduced upon the hearing of the final report and account. The final order contains no finding of facts upon which the adjudicatory part thereof can be sustained; neither is there any certificate of evidence in that connection. How and upon what basis the chancellor determined that $175 was a just and reasonable compensation for the receiver's solicitor for services rendered, or how the chancellor could know that the solicitor rendered any services whatever for this $175, this record leaves totally undisclosed. It would make no difference were it otherwise, but it may be mentioned that the receiver's final report is not verified. Nothing is shown as a basis for allowing the receiver $100 additional for services.

The final order of the chancellor, of December 11, 1907, is reversed and the cause is remanded that such further proceedings may be had as may be necessary and not inconsistent with this opinion.

*Reversed and remanded.*