W. E. ERICKSON CONSTRUCTION, INC., *et al.*, Plaintiffs and Counterde-fendants-Appellants and Cross-Appellees, v. CONGRESS-KENILWORTH CORPORATION *et al.*, Defendants and Counterplaintiffs-Appellees and Cross-Appellants.

First District (4th Division) No. 83—2197

Opinion filed January 10, 1985.—Modified on denial of rehearing May 2, 1985.

Stuart M. Widman, of Much, Shelist, Freed, Denenberg, Ament & Eiger, of Chicago, for appellants.

Nathan Diamond-Falk, of Chicago, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Plaintiffs, W. E. Erickson Construction, Inc., and Wilbert E. Erickson (jointly Erickson) brought this action to recover a sum allegedly due under a contract entered into with defendants, Congress-Kenilworth Corporation, James Adams and John Stafford (jointly C-K) for the construction of a concrete water slide, known as "Thunder Mountain Rapids" in Crestwood. C-K filed a counterclaim for damages, among other things, for construction defects. Following a bench trial, judgment was rendered for Erickson on count II of its amended complaint (breach of contract) in the amount of $202,000. The remaining counts I and III (preliminary injunction/appointment of receiver), IV (account stated), V (*quantum meruit*) and VI (accord and satisfaction) of Erickson's amended complaint and C-K's counterclaim were dismissed for want of equity. The trial court also awarded attorney fees to C-K from a fund held by the receiver, which previously had been appointed. Erickson appeals from the award of damages, the dismissal of counts I, III, IV, V and VI of its amended complaint and the award of attorney fees to C-K. C-K filed a cross-appeal which it has not pursued in this appeal.

The parties here are no strangers to this court. In an earlier appeal, we reversed an order appointing a receiver for C-K. (See *W. E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1983), 112 Ill. App. 3d 847, 445 N.E.2d 1209.) Much of the background surrounding this controversy is contained in that opinion and will not be repeated here. In summary, Erickson, a general contractor, entered into a contract with C-K for the construction of a concrete water slide for a total cost not to exceed $535,000, exclusive of additional costs and interest. The contract provided that Erickson would be paid the cost of the work performed by subcontractors, a contractor's fee of 15% of the project cost, exclusive of concrete, carpentry, architectural and engineering costs, Erickson's labor for concrete and carpentry work, and overhead, as well as additional amounts attributable to the costs of extra or modified work, permits, engineering fees, certain sewer and sanitary work, and interest at the rate of 2% over prime for overdue balances. Work commenced on April 15, 1981, and was completed on July 3, 1981. The project was open to the public the next day on July 4, 1981. To date, Erickson has been paid $150,000 on the contract.

Under its amended count II, Erickson sought damages under the contract in the amount of approximately $550,000, the value of the contract Erickson claimed for its full performance under the contract. The trial court, however, found Erickson was entitled to $352,000 on

its contract claim, and, after deducting $150,000 already paid to Erickson, awarded a judgment to Erickson for $202,000.

Erickson argues that the trial court erred in the assessment of damages awarded to it under the contract. Erickson maintains that the trial court, by entering judgment for it under its contract count, had found that Erickson had substantially performed under the contract. However, Erickson contends, the trial court did not award it damages for its substantial performance under the contract. Rather, Erickson asserts, the trial court erroneously entered judgment for it only in the amount of its out-of-pocket expenses for subcontractor labor and materials. C-K argues that the judgment entered was proper. C-K asserts that the trial court had found that Erickson had failed to substantially perform under the contract and, therefore, Erickson was not entitled to damages under the contract. Alternatively, C-K maintains that if the trial court had found that Erickson had rendered substantial performance, the award entered was still proper as it represented the value of the contract fully performed as proved by Erickson. The first issue to be resolved is whether Erickson substantially performed under the contract.

 Under the doctrine of substantial performance, the general rule regarding building contracts is that a builder is not required to perform perfectly, but rather is only held to a duty of substantial performance in a workmanlike manner. (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 673, 356 N.E.2d 565.) A purchaser who receives substantial performance of the building contract must pay the price bargained for, less an offset for defects in what he received as compared to what strict performance would have given him. (*Park v. Sohn* (1982), 89 Ill. 2d 453, 464-65, 433 N.E.2 651; *Mayfield v. Swafford* (1982), 106 Ill. App. 3d 610, 612, 435 N.E.2d 953; *Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 673-74, 356 N.E.2d 565; Restatement (Second) of Contracts sec. 347 (1979).) A contractor whose work amounts to less than substantial performance may not recover on the contract. Under such circumstances, a contractor may recover under a quasi-contractual theory for the reasonable value of its services rendered less any damages suffered by the purchaser. (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 673, 356 N.E.2d 565; J. Calamari & J. Perillo, Contracts sec. 11—26, at 426-28 (2d ed. 1979).) The question of whether substantial performance has been given varies on the facts presented in each case. (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 673, 356 N.E.2d 565.) The trial court's finding will not be disturbed on appeal unless the holding of the trial court is against the manifest weight of the evidence. *V & V*

*Cement Contractors, Inc. v. La Salle National Bank* (1983), 119 Ill. App. 3d 154, 157, 456 N.E.2d 655.

Judgment was rendered for Erickson on its contract count, count II of its amended complaint, in the amount of $202,000, plus statutory interest and costs. That count alleged C-K's breach of contract for non-payment and sought approximately $550,000 in damages, the value of the contract for Erickson's full performance. The trial court found that while there existed defects in construction of the water slide they were insufficient in themselves to sustain a finding that the water slide was constructed in a "wholly unworkmanlike manner." However, the court found that with respect to the selection of architects and in the subcontractor-bidding process, Erickson "wholly failed to perform." Notwithstanding this conclusion, the court then went on to enter judgment on amended count II (the breach of contract).

■■ C-K asserts that the finding of these deficiencies in Erickson's performance by the trial court indicates that the trial court had concluded that Erickson had not substantially performed under the contract. Contrary to C-K's contention, we believe that as the trial court had entered judgment on its contract count, the trial court necessarily found that Erickson had substantially performed under the contract. This conclusion is supported by the trial court's dismissal of Erickson's amended count V, which sought recovery on a noncontractual theory of recovery, *quantum meruit*.

Moreover, the evidence presented at trial established that Erickson had substantially performed under the contract. There was no substantial difference between what C-K contracted for and what it received. There was considerable testimony adduced with regard to the extensive cracking of the concrete flumes within the water slide. Witnesses for both parties presented conflicting testimony as to whether such damage was beyond acceptable limits. But all agreed that the cracks did not affect the operation of the structure as a water slide. Further, an important factor in determining whether a contractor or builder has rendered substantial performance is the actual receipt and enjoyment of benefits by the purchaser. (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 673, 356 N.E.2d 565.) We conclude that there was sufficient evidence to support the trial court's finding that Erickson sustained its burden in proving that its performance was substantial. Damages, therefore, should have been measured on this basis.

■■ The trial court did not, however, apply the standard of substantial performance in assessing Erickson's damages under the contract. While the trial court entered judgment on the contract, it is evident from the amount awarded that damages were not calculated upon

Erickson's substantial performance under the contract. Erickson sought recovery for its damages under the contract. It appears from the amount Erickson was awarded that Erickson only recovered its out-of-pocket expenses for subcontractor labor and materials. Based on this award, it would seem that the trial court may have unintentionally used the noncontractual theory of *quantum meruit* to measure Erickson's damages under the contract. We note, as we stated earlier, that the trial court dismissed Erickson's claim for *quantum meruit* under its amended count V. Nevertheless, under the circumstances, the trial court's award was not a proper method of computation of damages under the doctrine of substantial performance. The judgment as to damages therefore must be vacated and the cause remanded for a recalculation of the amount of damages Erickson is entitled to receive for its substantial performance under the contract.

Erickson next raises a number of arguments relating to the pleadings and to the particular calculations of damages. The matters concerning the pleadings, we believe, will not arise again, and we will not address them here. As to the particular findings of damages, the propriety of these findings is not clear at this point, and consequently we will not consider those issues. In light of our remandment for a reassessment of damages, the trial court is directed to recalculate damages and to take whatever evidence is necessary, if any, in order to calculate damages on the basis of substantial performance.

■ Erickson also contends that it is entitled to a rate of 2% interest over the prime rate for balances due but unpaid as provided under the contract. The contract provided that Erickson was to make written application for monthly progress payments and that C-K was required to pay within 30 days of application. On June 16, 1981, when the project was 60% completed, Erickson submitted to C-K an application for payment in the amount of $246,958 for the period April 1 to May 31, 1981. The trial court found that as Erickson never tendered a 30-day itemized statement to C-K as required by the contract, Erickson forfeited any claim to interest due since June 1981. The testimony of Erickson and Adams established that the only written application for payment to C-K was prepared in order for C-K to obtain a loan to enable C-K to pay Erickson. Despite Erickson's argument to the contrary, there was no testimony that the application was ever intended to be an application for payment due. Furthermore, C-K did not waive this contract provision by making payments on July 14 and August 20, 1981. The contract specifically provided that a precondition to a payment is a submission of an application. Interest is predicated on such an application. Thus, no waiver occurred. Accordingly, the trial court's

findings were not against the manifest weight of the evidence.

■ As an alternative ground for recovery, Erickson contends that the trial court erred in not entering judgment for it on the basis of an account stated for which Erickson would then be entitled to the full contract price. In support of this contention, Erickson points out that on June 20, 1981, C-K issued a corporate resolution authorizing the transfer by deed to Erickson of the land upon which the water slide was being built as security for payment. Also, on July 14, 1981, 10 days after the project was opened, C-K's attorney sent Erickson a letter which stated:

> "Please be advised that my office is representing Congress-Kenilworth Corp. in the pursuit of financing re: Thundermountain Rapids, Crestwood, Illinois. We totally acknowledge our indebtedness to W. E. Erickson Construction, Inc. and in the amount of $550,000 to date."

It is undisputed that Adams gave Erickson a check for $50,000 that same day.

An account stated has been defined as an agreement between parties who have had previous transactions that the account representing those transactions is true and that the balance stated is correct, together with a promise, express or implied, for the payment of such balance. (*LaGrange Metal Products v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 1053, 436 N.E.2d 645; *Motive Parts Company of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 938, 369 N.E.2d 119.) The agreement must manifest the mutual assent of both the creditor and the debtor. (*Allied Wire Products, Inc. v. Marketing Techniques, Inc.* (1981), 99 Ill. App. 3d 29, 40, 424 N.E.2d 1288; *Protestant Hospital Builders Club v. Goedde* (1981), 98 Ill. App. 3d 1028, 1032, 424 N.E.2d 1302.) The meeting of the minds upon the correctness of an account is usually the result of one party's rendering a statement of account to which the other party acquiesces. (*LaGrange Metal Products v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 1053, 436 N.E.2d 645; *Motive Parts Company of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 938, 369 N.E.2d 119.) The form of acquiescence is immaterial, and the meeting of the minds may be inferred from the conduct of the parties and the circumstances of the case. Where a statement of account is rendered by one party to another and is retained by the latter beyond a reasonable time without objection, this constitutes a recognition by the latter of the correctness of the account and establishes an account stated. *LaGrange Metal Products v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 1053, 436 N.E.2d 645; *Allied Wire Products, Inc. v. Marketing Tech-*

*niques, Inc.* (1981), 99 Ill. App. 3d 29, 424 N.E.2d 1288; *Motive Parts Company of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 939, 369 N.E.2d 119.

Based on our review of the evidence in this case, we conclude that the facts do not establish an account stated. First, the correspondence between the parties Erickson relies upon was not in the form of a statement of account. According to the definition of an account stated, the statement of account must be founded on previous monetary transactions between the parties which merely renders certain the amount of debt for a preexisting liability. (*Motive Parts Co. of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 941, 369 N.E.2d 119; 1 C.J.S. Account Stated sec. 44, at 726 (1952).) In the present case, the amount the parties were bound to pay was fixed in the contract. There were no series of previous transactions by which prior unliquidated amounts were merged together. Furthermore, the testimony established that the corporate resolution and letter from C-K's attorney were not intended as a statement of account, but rather were rendered in order for Erickson to secure financing on behalf of C-K as security for payment due under the contract. The fact that Adams made a partial payment of $50,000 on the account cannot be regarded as an acknowledgment of a balance due. *Allied Wire Products, Inc. v. Marketing Techniques, Inc.* (1981), 99 Ill. App. 3d 29, 424 N.E.2d 1288.

Also, in order to have an account stated there must be mutual assent to the account by both parties. This testimony revealed that the parties understood that C-K's obligation to Erickson was dependent upon the obtaining of additional financing for the project and Erickson could not be paid until after the requisite financing had been obtained. An account stated presupposes an absolute acknowledgment or admission of a sum certain due. If the assent to the amount due is qualified, there is not an account stated. *Allied Wire Products, Inc. v. Marketing Techniques, Inc.* (1981), 99 Ill. App. 3d 29, 41, 424 N.E.2d 1288.

Finally, where the existence of an account stated is disputed, the issue of whether it exists is a fact question which in a bench trial is properly resolved by the trial court. (*LaGrange Metal Products v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 1053, 436 N.E.2d 645; *Motive Parts Co. of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 940, 369 N.E.2d 119.) The trial court dismissed Erickson's amended count IV alleging an account stated for want of equity. Under the circumstances, we cannot hold that this determination was erroneous. Based on our conclusion, there is no need to reach the issue of whether the trial court erred in denying Erickson prejudgment in-

terest on the account stated.

■ Erickson further contends that the same facts also render C-K liable to Erickson on the theory of an accord and satisfaction. To constitute an accord and satisfaction, there must be an honest dispute between the parties, a tender with explicit understanding of both parties that it was in full payment of all demands, and an acceptance by the creditor with the understanding that the tender is accepted in full payment. (*Amoco Oil Co. v. Segall* (1983), 118 Ill. App. 3d 1002, 1012, 455 N.E.2d 876.) As with all contracts, to be enforceable there must be consideration, a meeting of the minds with the intent to compromise and, finally, execution of the agreement. (*Gord Industrial Plastics, Inc. v. Aubrey Manufacturing, Inc.* (1982), 103 Ill. App. 3d 380, 383-84, 431 N.E.2d 445.) However, the above presupposes a disagreement as to the amount due and partial payment of an amount undisputably due is not satisfaction of the whole debt and does not constitute consideration. *Quaintance Associates, Inc. v. PLM, Inc.* (1981), 95 Ill. App. 3d 818, 822, 420 N.E.2d 567; *Upper Avenue National Bank v. First Arlington National Bank* (1980), 81 Ill. App. 3d 208, 211, 400 N.E.2d 1105.

We do not agree that the correspondence between the parties indicates that the terms of the original contract and the amount of fees due pursuant to this contract were fairly in dispute to constitute an accord and satisfaction. As we stated earlier in discussing Erickson's claim for an account stated, the testimony showed that this correspondence was engaged in for the purpose of securing financing. It was not intended as an agreement to settle a *bona fide* dispute over an unliquidated sum. The trial court dismissed Erickson's count for an accord and satisfaction on the basis that it was not sufficiently established. We cannot say this ruling was error.

■ Erickson next contends that the trial court erred in denying it an equitable lien upon the water slide and its proceeds. We agree. An equitable lien is the right to have property subjected to the payment of a claim. It is neither a debt nor right of property, but a remedy for a debt. (*Watson v. Hobson* (1948), 401 Ill. 191, 201, 81 N.E.2d 885; *Hargrove v. Gerill Corp.* (1984), 124 Ill. App. 3d 924, 930, 463 N.E.2d 1226.) The imposition of an equitable lien arises in two situations: first, where the parties express in writing their intention to make a particular property, real or personal, or some fund the security for a debt, or where there has been a promise to convey or assign the property as security (*Oppenheimer v. Szulerecki* (1921), 297 Ill. 81, 87-88, 130 N.E. 325; *Carlyle v. Jaskiewicz* (1984), 124 Ill. App. 3d 487, 495, 464 N.E.2d 751; 4 J. Pomeroy, Equity Jurisdiction sec. 1235 (5th

ed. 1941)); and, second, equity has also recognized similar liens without an express agreement between the parties which arise wholly from general considerations of fairness and justice, such as where a party has made improvements on the property of another. (*Oppenheimer v. Szulerecki* (1921), 297 Ill. 81, 87-88, 130 N.E. 325; *Pope v. Speiser* (1955), 7 Ill. 2d 231, 238-39, 130 N.E.2d 507; *Calacurcio v. Levson* (1966), 68 Ill. App. 2d 260, 264, 215 N.E.2d 839; Restatement of Restitution sec. 170 (1937).) In either case, the essential elements of an equitable lien are (1) a debt, duty or obligation owing by one person to another, and (2) a *res* to which that obligation fastens. *Hargrove v. Gerill Corp.* (1984), 124 Ill. App. 3d 924, 931, 464 N.E.2d 1226; *Marshall Savings & Loan Association v. Chicago National Bank* (1965), 56 Ill. App. 2d 372, 378, 206 N.E.2d 117.

The debt Erickson alleges is owing by C-K is the amount under the contract. The *res* to which the complaint seeks to fasten that debt is the water slide. The record shows that C-K deeded the property on which the water slide was being built to Erickson as security for payment under the contract. Erickson was to reconvey the property to C-K when payment had been made. The security failed when it was learned that C-K did not own the property. This court earlier noted in *W. E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1983), 112 Ill. App. 3d 847, 445 N.E.2d 1209, that an equitable lien could properly be imposed on behalf of Erickson because of the mutual mistake regarding the validity of the warranty deed Erickson received from C-K as security for additional financing for the improvements. (112 Ill. App. 3d 847, 850, 445 N.E.2d 1209.) It appears that the essential elements for the imposition of an equitable lien were present in the instant case. Here, when the security failed, Erickson in effect was expending its own money for the improvement of C-K's property. Under the circumstances, Erickson is entitled to an equitable lien on the premises for the reasonable value of the permanent improvements it placed on the premises. *Pope v. Speiser* (1955), 7 Ill. 2d 231, 130 N.E.2d 507; *Calacurcio v. Levson* (1966), 68 Ill. App. 2d 260, 215 N.E.2d 839.

Furthermore, we reject C-K's contention that as Erickson failed to specifically pray for an equitable lien on the premises or the proceeds in its amended complaint, Erickson has waived this issue. In count I of the amended complaint, Erickson sought a preliminary injunction, the appointment of a receiver and any other equitable relief that the court deemed appropriate in order to protect and preserve the assets of C-K to assure that there remained a source of funds with which the obligation owed to Erickson could be satisfied. Count III of

the amended complaint alleged additionally that C-K was diverting funds and that as such the revenue generated by the operation of the water slide constituted a special fund, and requested judgment against C-K as prayed for in amended count I. Thus, we believe that the allegations of the amended complaint and the proof at trial reasonably informed C-K that Erickson was claiming an equitable right to recover the value of the improvements made to C-K's premises. See *Pope v. Speiser* (1955), 7 Ill. 2d 231, 243, 130 N.E.2d 507.

Erickson finally argues that the award of attorney fees to C-K out of the receiver's fund was improper. In May of 1981, Erickson filed an action requesting the circuit court to appoint a receiver over the assets of C-K. C-K opposed the imposition of a receiver, but one was subsequently appointed. In February of 1983, this court reversed the appointment of the receiver. (*W. E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1983), 112 Ill. App. 3d 847, 445 N.E.2d 1209.) The trial court on June 9, 1983, awarded attorney fees to C-K for fees incurred after the appointment of the receiver and only those fees incurred to contest the receivership. Approximately $16,000 in attorney fees were awarded on July 6 and September 30, 1983.

Erickson first argues that as a receiver should only pay attorney fees for activities which benefit the receiver or protect and preserve the receiver's fund (*Robinson v. Ruprecht* (1909), 147 Ill. App. 646), C-K was not entitled to an award of attorney fees out of the fund for resisting the receivership.

As a general rule, where application has been made for the appointment of a receiver for a corporation, attorney fees and expenses in resisting such application, if made in good faith and upon reasonable grounds, may become a valid claim against the receiver, such claim being addressed to the sound discretion of the trial court. (*Assets Realization Co. v. DeFrees, Brace & Ritter* (1907), 225 Ill. 508, 513, 80 N.E. 263; *People ex rel. Schacht v. Main Insurance Co.* (1983), 114 Ill. App. 3d 334, 338, 448 N.E.2d 950; 2 Clark on Receivers sec. 642(b), at 1107 (3d ed. 1959).) This is based on the idea that where the very existence of the corporation is attacked, it is the corporation's right and duty of its officers to protect the interest of the corporation and its creditors. (*People ex rel. Schacht v. Main Insurance Co.* (1983), 114 Ill. App. 3d 334, 338, 448 N.E.2d 950.) This rule is not limited to situations where the appointment of a receiver is resisted in the first instance but it applies also to good faith efforts, on reasonable grounds, to discharge a receiver already appointed. (*People ex rel. Schact v. Main Insurance Co.* (1983), 114 Ill. App. 3d 334, 341, 448 N.E.2d 950; *Sims v. Homeseekers Fire Insurance Co.* (1938), 120 W.

Va. 459, 199 S.E. 69, 70-71.) Here, as C-K had both the right and the duty to repel an attack upon its corporate existence it regarded as unfounded, it was entitled to recover enough of its own assets to pay the expenses of its defense. Accordingly, payment out of the receiver's fund was proper.

Erickson also contends that as they sought to obtain the appointment of the receiver and to protect and preserve the fund, Erickson has a priority claim against the receiver's fund for fees. While it is true that an award of attorney fees is proper to the party who had succeeded in procuring the receivership in order to protect the fund (*Hozz v. Varga* (1958), 166 Cal. App. 2d 539, 543-44, 333 P.2d 113, 117; 75 C.J.S. *Receivers* sec. 293(d) (1952)), where the judgment appointing the receivership is reversed because of insufficient facts to justify the appointment, as in the instant case, the property involved is not chargeable with the services of the party securing the appointment. 75 C.J.S. *Receivers* sec. 305, at 987 (1952); *O'Malley v. Hankins* (1936), 209 Ind. 461, 465, 199 N.E. 558, 560.

Lastly, Erickson maintains that the payment of C-K's attorney fees before the litigation was concluded constituted a premature determination of the rightful owner of the fund. Erickson argues that since it is entitled to an equitable lien upon that money, the payment to C-K impaired that relief. Here, attorney fees were awarded before the mandate issued from this court on November 18, 1983. The granting of attorney fees, made after the appellate court had reversed and vacated the order appointing the receiver but before the issuance of the mandate, was premature (75 C.J.S. *Receivers* sec. 384, at 1051 (1952); see *Hare & Chase, Inc. v. Dunton* (Tex. 1928), 8 S.W.2d 315, 316.) However, no prejudice to Erickson resulted, because the payment of attorney fees, as part of the cost of the receivership, has priority (75 C.J.S. *Receivers* sec. 293(d) (1952)), and this rule is not affected by the existence of Erickson's equitable lien. *Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1044, 389 N.E.2d 182.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed in part and reversed and remanded for reassessment of damages.

JOHNSON and ROMITI, JJ., concur.