RUTH ANN LEVAN *et al.*, Plaintiffs-Appellants, v. DALLAS RICHTER, JR., d/b/a Richter Swimming Pool Distributors, Inc., Defendant and Counterplaintiff-Appellee (Bauer Brothers Construction Company, Inc., Defendant and Counterdefendant-Appellant).

Fifth District   No. 5—85—0074

Opinion filed March 9, 1987.

Edward Neville, of Belleville, for appellants Ruth Ann Levan, Jane Levan, Bert Levan, and Alma Levan.

Patrick M. Flynn, of Jennings, Flynn & Guymon, of Belleville, for appellant Bauer Brothers Construction Company, Inc.

Harry J. Sterling, of Sterling & Stanley, P.C., of Fairview Heights, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiffs, Ruth Ann Levan, Jane Levan, Bert Levan, and Alma Levan, filed a four-count complaint against defendants, Dallas Richter, Jr., d/b/a Richter Swimming Distributors, Inc., and Bauer Brothers Construction Company, Inc., alleging breach of a contract to construct an in-ground swimming pool. The complaint alleged, *inter alia*, that Richter failed to complete the swimming pool in accordance with contract specifications and that the swimming pool was rendered unusable due to Bauer Brother's negligent installation. Bauer Brothers filed a cross-complaint alleging that because Richter directly supervised and controlled the construction of the swimming pool by Bauer Brothers, Bauer Brothers should be indemnified by Richter for any judgment in the Levans' favor against Bauer Brothers.

Richter filed a two-count cross-claim, alleging: (1) that since Bauer Brothers controlled the manner by which the swimming pool was installed, Richter should be indemnified by Bauer Brothers for any judgment in plaintiffs' favor against it; and (2) that Richter was entitled to damages from Bauer Brothers due to Bauer Brothers' failure to complete the swimming pool. Richter also filed a two-count counterclaim against plaintiffs, alleging: (1) that Richter performed the contract and is entitled to the contract price; and (2) alternatively, that Richter is entitled to 50% of the contract price pursuant to a penalty provision contained in the contract. After a bench trial, the circuit court of St. Clair County entered judgments: (1) in favor of plaintiffs and against Richter and Bauer Brothers in the amount of $6,688.60; (2) in favor of Richter on Bauer Brothers' cross-claim; and (3) in favor of Richter on its cross-claim against Bauer Brothers for indemnification. In addition, Richter was awarded $4,190.18 against Bauer Brothers due to Bauer Brothers' failure to complete the swimming pool. Plaintiffs and Bauer Brothers appeal from these judgments. The facts relevant to each appeal will be set out in conjunction with our discussion as to each appeal.

On June 6, 1978, the Levans entered into a written construction contract with Richter. This contract provided that in exchange for $12,873, Richter would install a rectangular B-Mark in-ground swimming pool on the Levans' property. Richter warranted that the pool

would be free from defects in material or workmanship for a period of one year from the date of completion. The Levans paid Richter $1,300 as a down payment. Richter subsequently entered into an oral contract with Bauer Brothers to construct the Levans' pool. Construction began approximately one week later.

Shortly after excavation began, ground water was encountered at a depth of 6 to 7 feet. Ruth Ann Levan testified that Richter and Bob Weiters, a Bauer Brothers representative, assured her that a "solid" pool could be constructed at the present location. The fact that these assurances were given was corroborated by Richter. In reliance upon these assurances, the Levans had 50 truckloads of dirt and gravel delivered to the site and agreed to increase the dimensions of the pool from 20 by 40 feet to 23 by 42 feet and to increase the depth in the shallow end from 36 inches to 42 inches and the depth in the deep end from 8 feet 6 inches to 8 feet 7 inches. With the exception of the dirt and gravel, the cost of this larger pool was apparently to be borne by Richter.

On Friday, July 12, 1978, the pool was completed and filled with water. By the next morning the water level had dropped over an inch and by the second day by one foot. On Monday, Bauer Brothers drained the pool and broke a hole in the poured concrete floor to determine the cause of the leak. This hole in the pool floor revealed that the floor of the pool at this point was approximately 3 to 4 inches thick. The contract between the Levans and Richter and the B-Mark Pools construction manual specifically provided that such concrete floor was to be at minimum 6 to 8 inches thick. Moreover, the hole in the pool floor revealed that wire mesh reinforcement which was to have been incorporated into the concrete floor in accordance with the B-Mark Pools construction manual was not present. It was further established that several steel rods were to have reinforced and attached the fiber glass walls of the pool to the concrete floor in accordance with the procedure set forth in the B-Mark Pools construction manual. Such rods were not used in construction. The parties acknowledge that the pool cannot be repaired. Richter testified that at the time of the trial in 1984, an identical pool would cost at least $25,000.

Since the plaintiffs were entitled to expect that the swimming pool for which they contracted would hold water (*cf. Park v. Sohn* (1982), 89 Ill. 2d 453, 433 N.E.2d 651), the pool's failure to hold water was a breach of contract. Consequently, the only question to be resolved is the determination of which defendant is responsible for the breach and the determination of the proper amount of plaintiffs' damages. The evidence concerning the damages of plaintiff was as fol-

lows.

Arnold Czechowicz, vice-president in charge of building for Keeley Brothers Construction Company, estimated that in 1980 it would have cost $7,600 to remove all vestiges of plaintiffs' pool and restore the site to its original condition; however, due to increased labor costs, Czechowicz estimated that the 1984 removal and restoration cost had increased 20 to 25%. Although he did not provide a breakdown of the costs upon which his estimate was based, Czechowicz believed he had figured approximately 20% profit into his estimate.

Bruce Holland, vice-president of construction operations for Bauer Brothers, testified that he had estimated the cost of removing hundreds of structures during his career. Holland estimated in 1984 that it would cost approximately $2,000 to remove the Levans' pool and restore the land to its original condition. Holland testified that his estimate was based upon the fact that a Caterpillar "highlift" would be required to break the concrete and lift it and other extraneous materials into trucks which would haul this material away. Holland was of the opinion that this task would take 16 hours to complete and that the cost of the Caterpillar and the operator would be $60 per hour. Thus, the total cost for such equipment and its operator would be $960. He further testified that use of a dump truck for 16 hours would be required to haul the material away. At an estimated cost of $35 per hour for a truck and an operator, the total cost for such hauling would be $560. Holland estimated that the use of a tractor to grade the pool site and prepare the ground for seeding would be required for approximately four hours. The cost of this tractor and an operator would be $25 per hour, making the total cost for such grading and seeding $100. In addition, one laborer on site for 16 hours at $20 per hour would be required, for a total of $320. Holland stated that the approximately 40 truckloads of material disposed of would cost $15 per truckload, a total cost of $600. His estimate included approximately 15 to 20% profit on the job.

Exclusive of the $1,300 down payment, the record establishes that the plaintiffs incurred the following expenses to prepare the site: (1) a total of $1,317.09 for approximately 50 loads of dirt and gravel; (2) $985 for specially fitted fencing and gates; (3) $350 to an electrician for installation of special electrical equipment; (4) a total of $195.06 for special electrical equipment; (5) $137.56 for landscaping and seeding grass around the pool area; and (6) $97.20 for water to fill the swimming pool. The sum of these expenses is $3,081.91.

■ The trial court determined that the plaintiffs' damages would be computed in accordance with the rationale expressed in *Mayfield*

*v. Swafford* (1982), 106 Ill. App. 3d 610, 435 N.E.2d 953, because the cost of removing the old pool and constructing a new pool at the original contract price would be disproportionate to the resulting benefit obtained by the plaintiffs. The following computation of damages was made to restore the site to its original condition and to compensate the plaintiffs for payments to prepare the site: (1) $960 for removal equipment; (2) $560 to haul debris away; (3) $320 for a tractor to grade the site; (4) $600 to dispose of the debris; (5) $488 profit to the company restoring the site; (6) $3,081.91 incurred by the plaintiffs to prepare the site, minus the salvage value of pool accessories ($617.37, as indicated in Richter's exhibit No. 7); and (7) the $1,300 down payment the plaintiffs made prior to construction. The trial court entered judgment in favor of plaintiffs for $6,688.60; however, according to our computation, the total of these amounts is $6,692.54, rather than $6,688.60.

The plaintiffs ask this court to require that defendants pay for removal of all vestiges of the defective pool and for the construction of a new pool at the original contract price of $12,873. Although we agree that all traces of the defective pool should be removed and that plaintiffs should be compensated for such removal and for expenses incurred to prepare the site, we do not agree that plaintiffs are entitled to a new pool at the original contract price, because this remedy would be disproportionate to the damages suffered by plaintiffs. (See *Mayfield v. Swafford* (1982), 106 Ill. App. 3d 610, 613-14, 435 N.E.2d 953, 956.) Moreover, since the amount the plaintiffs paid on this contract ($1,300) plus their incidental and consequential damages (*i.e.* costs of removal, restoration, and preparation of the site minus costs recovered (*i.e.* salvage value)) may be determined with a sufficient degree of certainty, the diminution-of-value standard for the determination of damages set forth in *Mayfield* is not applicable because there the swimming pool had been paid for and in use for a number of years prior to its defects being discovered. (See Restatement (Second) of Contracts, sec. 348(2) (1981); see also D. Dobbs, Remedies sec. 12.23, at 910-12 (1973).) Since the pool in the case at bar cannot be repaired, we conclude that the measure of plaintiffs' damages is the amount plaintiffs paid on the contract plus: (1) the cost of removal of the defective pool, (2) the cost to restore the site to its original condition, and (3) the costs incurred by plaintiffs to prepare the site. The total of these costs should be reduced by any costs recovered or avoided (*i.e.*, salvage value) by plaintiffs.

■ We conclude that the trial court properly determined plaintiffs' damages with the following exceptions. It appears that the trial

court relied almost exclusively upon the testimony of Bauer Brothers' vice-president Bruce Holland in determining removal and restoration costs. Holland testified that the cost for a tractor and operator to grade the site after removal would be approximately $100 ($25 per hour for 4 hours). He further testified that one laborer on site during removal and restoration would cost approximately $320 ($20 per hour for 16 hours). Since the cost of a laborer was not included by the trial court in its assessment of damages, we modify plaintiffs' damage award to include this additional $320 cost. However, since the cost of grading the site should be $100 as opposed to the $320 assessed by the trial court, we reduce this element of the plaintiffs' damage award accordingly. The trial court computed the removal and restoration portion of the Levans' damages to be $2,928. In accordance with our findings, we compute this amount to be $3,048. Our figure includes the 20% profit margin the trial court incorporated into its original computation. When this figure is added to the costs incurred by the Levans to prepare the site ($3,081.91) and the $1,300 down payment on the contract, the total is $7,429.91.

Unlike the trial court's judgment, this computation does not charge plaintiffs for the salvage value of pool accessories as indicated in Richter's exhibit number 7. It is axiomatic that plaintiffs should not be assessed for the salvage value of items they do not own. In this regard, the construction contract between the Levans and Richter provided:

> "It is understood and agreed between the parties hereto that the pool and all pool equipment shall remain the property of Company [builder]. The Owner shall not use the pool until such time as terms of this contract are completed, and Company shall specifically have the right to remove any or all of the said items in the event the contract price is not paid in accordance with the terms of this agreement."

Richter admitted that plaintiffs have paid him only $1,300 on a $12,873 contract. Under the terms of the contract, Richter still owned all of the pool accessories referred to in Richter's exhibit No. 7. Thus, the plaintiffs should not have been assessed for the salvage value of these items. We therefore conclude that the judgment should be entered awarding plaintiffs damages in the amount of $7,429.91.

We next consider the issues raised by Bauer Brothers regarding their liability to the plaintiffs and to Richter.

Bauer Brothers' first contention is that plaintiffs cannot maintain a suit against them because the Levans were not direct third-party beneficiaries to the contract between Richter and Bauer

Brothers. We previously have concluded the following regarding third-party beneficiaries:

> "If a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon. Each case must depend upon the intention of the parties as gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution." (*Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 657, 475 N.E.2d 1327, 1330.)

The plaintiffs stood to gain a substantial, direct benefit (*i.e.*, an in-ground swimming pool) from the contract between Richter and Bauer Brothers. We therefore reject Bauer Brother's contention that plaintiffs were not third-party beneficiaries to the contract between Richter and Bauer Brothers.

Bauer Brothers next urge that while they may have been guilty of minor construction deficiencies, these deficiencies were not the cause of the catastrophic break. Instead, they contend, the cause of such break was either defective design or the selection of a poor construction site. Specifically, Bauer Brothers refer to the testimony of Otto Fenner, a consultant, who testified that (1) the use of steel bars with wire mesh, rather than wire mesh alone, to reinforce the bottom of the pool would have prevented the pool from cracking, and (2) there were watershed problems at the construction site.

Whether a breach of contract has occurred is a question of fact, and the judgment of the trier of fact thereon will not be disturbed unless it is clearly against the manifest weight of the evidence. (*Horton Industrial, Inc. v. Village of Moweaqua* (1986), 142 Ill. App. 3d 730, 738, 492 N.E.2d 220, 226.) Although Fenner did testify that he would have reinforced the pool differently, he acknowledged that swimming-pool builders frequently use the same method of reinforcement that was employed in the construction of the present pool. Fenner further testified that while the concrete floor eventually may have cracked due to the watershed problems at the construction site, the primary cause of the break in the present pool was that steel mesh was not properly worked into the concrete floor. When this testimony is considered in conjunction with the fact that (1) the concrete floor was one-half the thickness established by the construction manual and (2) steel mesh which was to be incorporated into the entire concrete floor

in accordance with the construction manual was not present in portions of the concrete floor, we conclude that the trial court's finding that the break was caused by faulty construction was not contrary to the manifest weight of the evidence.

■ The third issue raised by Bauer Brothers in the instant appeal is that even if the pool was improperly constructed, they are not responsible because Richter, the general contractor, failed to properly supervise construction. Bauer Brothers submit in their brief that their only responsibility to Richter and the plaintiffs was "to build the pool *** in accordance with the submitted design and specifications." The evidence establishes that neither the concrete floor nor the walls were built in accordance with the submitted design and specifications. Moreover, Richter testified that although he was not present when the steel mesh was laid down or when the concrete floor was poured, he did inspect the site daily for at least two hours on each occasion. Furthermore, Richter and Clyde Black, president of B-Mark Pools, Inc., testified that the man in charge of construction for Bauer Brothers stated during a meeting on site that he had built many pools and that there was no need to reinforce the back side of the side walls with steel rods. While it is true that Richter did not halt construction over this deficiency, the trial court's finding that Bauer Brothers were liable to both the plaintiffs and to Richter for breach of contract was not contrary to the manifest weight of the evidence.

■ Bauer Brothers further contend that Richter failed to mitigate damages. We note, however, that Bauer Brothers represented to Richter that they had a great amount of expertise in swimming pool construction. When these representations are considered in light of the fact that the break caused by faulty construction resulted in irreparable damage to the pool, we find that the trial court's award of damages to Richter was not contrary to the manifest weight of the evidence. (See *Ray v. Winter* (1977), 67 Ill. 2d 296, 307, 367 N.E.2d 678, 684.) Nonetheless, we find error in the amount of damages awarded to Richter. The trial court apparently awarded the total of Richter's exhibits Nos. 2, 3, 4, 5, and 6 as its determination of damages, the total of these items being $4,190.18. However, the items in Richter's exhibit No. 7 are salvageable and, therefore, should have been attributed to Richter rather than the Levans. Consequently, we reduce Richter's total damage award against Bauer Brothers to $3,572.81, being the $4,190.18 less the $617.37 salvage value.

■ Bauer Brothers next contend that the trial court should have limited the amount of plaintiffs' damages for removal of the pool and restoration of the construction site to its original condition to $2,000

because this was the amount Bauer Brothers would have charged for removal of the pool. Bauer Brothers further urge that the court should have entered judgment in their favor against Richter in the amount of $17,716.96 because Bauer Brothers substantially performed the contract. Alternatively, Bauer Brothers contend that, if this court determines that Bauer Brothers did not substantially perform their contract with Richter, Bauer Brothers should at least be entitled to the reasonable value of their material and services.

Although Bauer Brothers would have removed the pool and restored the site to its original condition for $2,000, the detailed breakdown of the costs for the job provided by Bauer Brothers' vice-president, Bruce Holland, indicated that the actual cost for this job would be in excess of $2,500 exclusive of profit. We are unwilling to require plaintiffs to permit Bauer Brothers to remove the pool and restore the site for a sum less than the actual costs for such work because the evidence indicates that Bauer Brothers were either unable or unwilling to satisfactorily construct the pool as they had agreed to do. We therefore conclude that the trial court's assessment of the cost of removal and restoration was not contrary to the manifest weight of the evidence.

■■ ■ Under the doctrine of substantial performance, the general rule regarding building contracts is that a builder is not required to perform perfectly but, rather, is only held to a duty of substantial performance in a workmanlike manner. (*W. E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1985), 132 Ill. App. 3d 260, 264, 477 N.E.2d 513, 517.) An important factor in determining whether a builder has rendered substantial performance is the actual receipt of benefits by the purchaser. (*V & V Cement Contractors, Inc. v. La Salle National Bank* (1983), 119 Ill. App. 3d 154, 158, 456 N.E.2d 655, 658.) The evidence in the case at bar establishes that Bauer Brothers failed to follow contract specifications in several material aspects and that, as a result of such failure, the pool suffered a catastrophic, irreparable break the first night it was filled with water. Since the plaintiffs are entitled to full reimbursement of the payments they made to Richter, Richter realized no benefit from Bauer Brothers' performance. Thus, the trial court's finding that Bauer Brothers did not substantially perform its contract with Richter is not contrary to the manifest weight of the evidence. See *W. E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1985), 132 Ill. App. 3d 260, 264, 477 N.E.2d 513, 518.

■■ A contractor whose work amounts to less than substantial performance may not recover on the contract. Under such circum-

stances, however, a contractor may recover under a quasi-contractual theory for the reasonable value of its services rendered less any damages suffered by the purchaser. (*W. E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1985), 132 Ill. App. 3d 260, 264, 477 N.E.2d 513, 517-18.) In the instant case Bauer Brothers built an in-ground pool which did not hold water. Such a structure is worth nothing. Thus, Bauer Brothers may not recover any damages from Richter under an implied-contract theory.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed as modified by increasing the judgment in favor of plaintiffs and against Bauer Brothers Construction Company, Inc., from $6,688.60 to $7,429.91 and by reducing the judgment in favor of Richter Swimming Pool Distributors, Inc., and against Bauer Brothers Construction Company, Inc., from $4,190.18 to $3,572.81.

Affirmed as modified.

JONES and WELCH, JJ., concur.