*In re* ESTATE OF JUDY ANN SASS, Deceased (Dennis Sass, Petitioner (Dennis Sass, Petitioner; Shannon Sass, Appellee; John Mitchell *et al.*, Appellants)).

Second District   No. 2—92—0924

Opinion filed July 9, 1993.

H. Kent Heller, of Heller, Holmes & Associates, P.C., of Mattoon, and John F. Mitchell, of Mt. Carroll, for appellants.

Karl F. Winkler, of Rockford, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Attorneys John Mitchell and Heller, Holmes and Associates appeal the order of the trial court limiting their fees under a contingency fee contract for a settlement they obtained in connection with the wrongful death of Judy Ann Sass.

Judy Ann Sass was killed in an automobile accident on February 10, 1992, while she was a passenger in a car driven by her mother. Dennis Sass, Judy's husband and executor of the probate estate, hired Mitchell to handle the wrongful death action. Mitchell brought Kent Heller on as cocounsel. Dennis entered into a one-third contingency fee agreement with the attorneys. The record does not contain a copy of this agreement, but neither party disputes its existence. Soon thereafter, the attorneys settled the case with the insurance company for $250,000, the limit on Judy's mother's insurance policy.

Dennis, through Mitchell and Heller, proposed that the trial court distribute two-thirds of the recovery to Dennis and one-third of the recovery to Shannon Sass, Judy's minor daughter. With attorney fees subtracted in equal proportion from each share, this would have resulted in a distribution of $83,333.33 to the attorneys, $55,555.56 to Shannon, and $111,111.11 to Dennis.

The trial court held a settlement hearing on May 5, 1992. At this hearing, it appointed a guardian ad litem to represent Shannon. The trial court also heard testimony relative to the settlement, the distribution of assets, and the attorney fees. Dennis testified that Judy was 42 at the time of her death. He and Judy had been married for 19 years. Shannon, their only child, was 11. Judy's income was approximately $3,000 per year.

Dennis testified that he met with Mitchell shortly after Judy's death. He and Mitchell discussed the one-third contingency fee and Dennis felt comfortable with it. Dennis also agreed to permit Mitchell to bring in a second attorney at no additional cost. Dennis further testified that prior to entering into the contingency fee agree-

ment the insurance company had not offered to pay anything and Mitchell had advised him that the recovery would probably be less than the policy limit. Dennis testified that he thought the fee arrangement was fair. He also revealed that the attorneys were attempting to recover an additional $50,000 from another policy.

The trial court approved the $250,000 settlement. The trial court reserved ruling on the distribution and the attorney fees. The trial judge stated that he had a "conscience" and he was not sure he could allow the attorneys to receive $83,000 for two months' work in a case involving a minor. In particular, the trial judge stated: "I don't want to walk the streets of Mt. Carroll and look at a minor who lost her mother who's getting less than two lawyers who worked on the case for two months."

The trial court held an additional hearing on July 14, 1992, to resolve the distribution and attorney fees issues. In his affidavit, Heller had stated that he had never handled a wrongful death or personal injury matter on any other than a contingency fee basis and that a one-third contingent fee was customary, fair, and reasonable. Heller also had stated that Mitchell had initially thought that he could not recover more than $100,000 in this case because of the reluctance of Carroll County juries to award large amounts and because Judy had earned little income while she was alive. Heller had further stated that the insurance carrier had initially delayed processing the claim and that his experience with dealing with insurance companies had enabled him to expedite the matter.

The evidence also established that the attorneys never filed a lawsuit in the case. Heller's billing records indicated that he spent a total of 32 hours on the case and incurred $180 in additional expenses. Mitchell stated in his affidavit that he spent a total of 39.7 hours on the case. The attorneys never offered Dennis any alternative to the contingency fee arrangement.

Shannon's guardian argued at the hearing that Mitchell and Heller had negotiated a good settlement for his client but that because the case never went to trial, it was not customary to charge the entire one-third contingency fee. The guardian stated:

> "I think that it [attorneys' fee] should be less than that [one-third of the settlement]. I think it should be twenty-five percent or something like that or less due to the fact especially just because of the nature of the case and the fact that it was only in the hopper for two months. I think the gentlemen did a fine job in getting a good Settlement, but I think

they should show a little kindness and compassion and I think they should have the one-third lowered for the minor child."

The attorneys agreed that a fee of 25% of Shannon's share, along with one-third of Dennis' share, would be appropriate.

The trial court found that Dennis and Shannon had depended equally on Judy. It therefore apportioned $125,000 to Dennis and $125,000 to Shannon. As to the attorney fees, the trial court stated:

"I think in this case Dennis freely and voluntarily entered into this contingency fee agreement which I think he should be bound by. I did not hear nor do I find any cases which would require the court to bind the minor who did not enter this agreement to the same contingency fee agreement.

I feel that a lawyer, and I was one and still am although it has been some time, when faced with the possibility of a case of this nature, should take a realistic look and honest view at not only the time that's expended but the manner in which the Settlement was accomplished.

Apparently in this case the time that we are talking about, and I see most of the things that are on Mr. Heller's list have occurred since that time, but we talked about a letter and an inventory. I am simply too conscious [sic] to allow that. Even though I feel strongly in many cases lawyers are underpaid, I just simply have too much conscience when it is left up to me to proceed against a Minor's Estate for that type of an award for that type of service."

The trial court awarded Mitchell and Heller fees in the amount of one-third of Dennis' share of the recovery, or $41,666. The trial court awarded them no fees from Shannon's share of the recovery.

The attorneys appealed the trial court's fee determination, arguing that the trial court abused its discretion in refusing to allow them any compensation for the money they obtained for Shannon. Shannon, through a guardian, has filed a response. Mr. Sass also appealed the trial court's 50/50 apportionment of the $250,000, but he subsequently voluntarily withdrew his appeal.

■ The issue in this appeal turns, to a great extent, on the characterization of the trial court's decision. According to the attorneys, the trial court "ordered that the attorneys receive no fees whatsoever for their efforts or for creating a fund for the minor." The guardian, on the other hand, argues that instead of allowing the attorneys the one-third fee that the contract contemplated, the

trial court instead awarded the attorneys one-sixth of their clients' recovery and then simply charged the entire fee to Dennis' share.

We conclude that the record supports the guardian's interpretation of the trial court's decision. The trial court did specifically find that Dennis was bound by the contingency fee agreement while Shannon was obligated to pay no fees. However, the record, when read as a whole, suggests that the trial court based its fee award on the entire $250,000 recovery. It seems that the trial court believed that the $41,666 that it awarded to the attorneys from Dennis' share sufficiently compensated the attorneys for the work they did on behalf of both Dennis and Shannon.

Because Dennis did not appeal the trial court's decision to charge all of the fees from his share of the recovery, we need not consider whether that decision was an abuse of discretion.

We next address whether the trial court abused its discretion when it limited the attorney fees to $41,666. The guardian points out on appeal that under the local rules applicable to Carroll County: "If an attorney enters into a contingent fee contract with a representative for prosecuting a cause of action for personal injuries *** or for death, such fee is subject to the approval of the court." Fifteenth Judicial Circuit R. 12.14(e) (1988).

■ Contingency fee agreements have generally been enforced unless they are unreasonable. (*Leonard C. Arnold, Ltd. v. Northern Trust Co.* (1987), 116 Ill. 2d 157, 164; *Dunn v. Illinois Central Gulf R.R. Co.* (1991), 215 Ill. App. 3d 190, 201-02.) However, courts are authorized to evaluate contingency fee arrangements to insure that they are reasonable and do not result in an excessive fee. (*In re Doyle* (1991), 144 Ill. 2d 451, 463.) Furthermore, "[c]ourts are imbued with both the power and the duty to protect minors involved in litigation." (*Leonard C. Arnold,* 116 Ill. 2d at 163.) Therefore, the trial court must carefully scrutinize any contingency fee agreement that is applied to a minor. (*Leonard C. Arnold,* 116 Ill. 2d at 163.) We will not disturb the trial court's fee award unless it is against the manifest weight of the evidence. *McHugh v. Olsen* (1989), 189 Ill. App. 3d 508, 514.

Rule 1.5(a) of the Illinois Rules of Professional Conduct requires that an attorney's fee be reasonable. That rule lists the following factors for determining whether a fee is reasonable:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent." 134 Ill. 2d R. 1.5(a).

In *Doyle* our supreme court suggested that it was improper for an attorney to recover a large contingency fee where he performed very little work and where no one contested his client's right to recovery, even if the attorney speculated at the outset of the representation that the claim would be contested. (*Doyle*, 144 Ill. 2d at 466-67.) On the other hand, such a fee may be reasonable where the attorney has expended a great deal of effort on behalf of the client. *Doyle*, 144 Ill. 2d at 469; see also *In re Estate of Callahan* (1991), 144 Ill. 2d 32, 44; *McHugh*, 189 Ill. App. 3d at 514.

We agree with the trial court that it had a duty to determine whether the contingency fee contract provided for a reasonable fee, especially because a minor was involved. The trial judge did state that he was motivated by "conscience" and a desire to protect a minor who had lost her mother. We conclude, however, that in following his conscience the trial judge also adequately considered the factors listed in Rule 1.5 when he determined the attorney fees in this case.

■ The trial court awarded fees in the amount of $41,666 from a settlement of $250,000—half of what the attorneys would have received under the contingency fee agreement. The trial court found that the attorneys spent a relatively short time working on the case. The trial court also considered that the attorneys never actually filed a lawsuit. The trial court's remarks indicate that it was not persuaded that the attorneys' special skill or experience, which the attorneys claim enabled them to obtain such a large recovery so quickly, justified an $83,000 fee. The trial court clearly considered the contingency fee contract and the amount of the recovery in setting the fees. Furthermore, the burden fell on the attorneys to

prove that their fees were reasonable. (*McHugh*, 189 Ill. App. 3d at 514.) The attorneys presented no evidence that taking this case required them to turn away other business. The trial court did not abuse its discretion in awarding attorney fees in this case.

The judgment of the circuit court of Carroll County is affirmed.

Affirmed.

QUETSCH and COLWELL, JJ., concur.